**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HEMPEL COATINGS (USA), INC. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CORBAN CORPORATION | : | NO. 03-6062 |
| Defendant. | | |

## ORDER

AND NOW, this _____ day of _____, 2004, upon consideration of

Plaintiff's Motion for Summary Judgment, and the response thereto,  IT IS ORDERED

that said Motion is DENIED.

BY THE COURT:

_____

James Knoll Gardner, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HEMPEL COATINGS (USA), INC. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CORBAN CORPORATION | : | NO. 03-6062 |
| Defendant. | : | |

## DEFENDANT CORBAN CORPORATION'S
## <u>RESPONSE TO MOTION FOR SUMMARY JUDGMENT</u>

Defendant, Corban Corporation, respectfully requests that the Court deny the

Motion for Summary Judgment which has been filed by Plaintiff in this matter.  In

support thereof, Defendant relies upon the factual allegations and legal arguments

contained in its Memorandum of Law and the attached Affidavits, which are filed

contemporaneously herewith, and which are incorporated herein by reference as though

set forth in full, and respectfully requests that the Court deny Plaintiff's Motion for

Summary Judgment.


Respectfully submitted,

MARK S. HALTZMAN & ASSOCIATES


DATE: *APRIL 15, 2004*                  BY: _____
                                            Mark S. Haltzman, Esquire
                                            Attorney I.D. No. 38957
                                            One Belmont Avenue, Suite 402
                                            Bala Cynwyd, PA   19004
                                            (610) 668-0865
                                            Attorneys for Defendant


2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HEMPEL COATINGS (USA), INC. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CORBAN CORPORATION | : | NO. 03-6062 |
| Defendant. | | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT CORBAN CORPORATION'S RESPONSE
## TO MOTION FOR SUMMARY JUDGMENT

Defendant, Corban Corporation ("Corban"), by and through its undersigned counsel, hereby submits this Memorandum in support of its response to the Motion for Summary Judgment which has been filed by Plaintiff, Hempel Coatings (USA), Inc. ("Hempel"), and for the reasons set forth herein, respectfully requests that the Court deny the Motion for Summary Judgment.

## I.    INTRODUCTION

On November 3, 2003, Plaintiff, Hempel (USA), Inc. f/k/a Hempel Coatings (USA), Inc. ("Hempel"), filed a One-Count Complaint against Corban alleging failure to pay under a common law sworn account.[1]  On January 26, 2004, Corban filed a Motion to Dismiss, which currently remains pending, which seeks the dismissal of the Complaint for lack of subject matter jurisdiction pursuant to F.R.Civ.P. 12(b)(1), as well as asserting a motion for more specific pleading pursuant to F.R.Civ.P. 12(e).  Due to the pendency of Corban's Motion to Dismiss, Corban has not yet filed its Answer and

---

[1]    This is, apparently, a cause of action under Texas law.  Plaintiff has not cited any reason why this Court should apply Texas law to this dispute.

Counterclaim to the Complaint, self-executing disclosures have not been made, and discovery has not commenced.

This Memorandum of Law, the Affidavit of William Condosta, attached hereto as Exhibit "A," and the Affidavit of James Dale, attached hereto as Exhibit "B," conclusively show that there are genuine issues of material fact relating to Hempel's claim against Corban which preclude the entry of summary judgment.

## II.    FACTS

Hempel's Complaint asserts that Corban has breached its agreement with Hempel by failing to make payments relating to certain invoices.  Due to the procedural posture of this case, Corban has not had the opportunity to file its Answer and Counterclaim, which will assert that Hempel, not Corban, breached the parties' agreement.

As set forth in the Affidavit of William Condosta, Vice President, Operations of Corban ("Condosta Affidavit") (attached hereto as Exhibit "A"), and the Affidavit of James Dale, a former manufacturer's representative for Hempel ("Dale Affidavit") (attached hereto as Exhibit "B"), Hempel breached the parties' contract by, *inter alia*, unilaterally changing its terms.  Astonishingly, as described below, it is only by relying upon the terms unilaterally imposed by Hempel that Hempel can even claim that any monies are now due and owing to it from Corban.  Furthermore, not only are there material facts in dispute relating to Corban's alleged liability, but Corban also has significant counterclaims for setoff relating to the parties' contract, as well as claims relating to damages sustained by Corban as a result of, *inter alia*, Hempel's tortious interference with Corban's existing and prospective third-party contracts.

4

Specifically, during August and September, 2002, Mr. Condosta, on behalf of Corban, negotiated with Henrik Hansen, of Hempel, the terms of a $200,000.00 line of credit. (Condosta Affidavit; Dale Affidavit.) The terms of the Hempel credit limit to Corban were as follows: (a) the maximum credit limit available to Corban was $200,000.00; (b) the payment term was net ninety day; (c) Corban's minimum monthly payment obligation was $16,733.62 against the outstanding balance; (d) all credits due to Corban from Hempel would be made upon shipment of product to Corban; and (e) all credits due in a given month would be considered part of the following month's payment against the outstanding balance (the "Agreement"). (Condosta Affidavit; Dale Affidavit.) It was further agreed that in the case of certain large shipments, Hempel would apply the amount of the credit even if the material had not yet been shipped. (Condosta Affidavit; Dale Affidavit.) The terms of the Agreement were confirmed by Hansen, on behalf of Hempel, via facsimile on September 6, 2002. (Condosta Affidavit; Dale Affidavit.)

In reliance upon the parties' Agreement, Corban bid upon certain projects requiring the use of substantial amounts of Hempel material, and regularly met its obligation to make the minimum monthly payment to Hempel through either payments directly to Hempel from Corban or through the application of credits to the outstanding balance owed by Corban. (Condosta Affidavit; Dale Affidavit.) Many of the credits due to Corban were the result of agreements which Corban had with third parties wherein those third parties would purchase goods and materials from Hempel at an increased price. (Condosta Affidavit; Dale Affidavit.) At all times, Hempel was aware of, and encouraged, Corban's efforts to have third parties purchase Hempel goods and

materials, which generated substantial credits to the Corban account. (Condosta Affidavit; Dale Affidavit.) In most months, the credits due to Corban from these third-party transactions sufficiently covered the minimum monthly payment due to Hempel pursuant to the Agreement. (Condosta Affidavit; Dale Affidavit.) At all times, Corban met all of its obligations under the Agreement, and, at no time prior to Hempel's unilateral and impermissible change in the Agreement's terms, did Hempel ever notify Corban of any breach of the Agreement, or request that Corban cure any alleged breach of such Agreement. (Condosta Affidavit; Dale Affidavit.)

On March 13, 2003, in violation of the parties' Agreement, without prior notice to Corban, Hempel notified Corban that Hempel was unilaterally reducing Corban's line of credit by 50% to $100,000.00, effective March 31, 2003. (Condosta Affidavit; Dale Affidavit.) At the time Hempel breached the Agreement by unilaterally reducing the line of credit, Corban had been bidding on projects and entering into contracts in reliance upon the existence of the parties' agreed-upon $200,000.00 line of credit. (Condosta Affidavit; Dale Affidavit.) In blatant breach of the Agreement, Hempel notified Corban that no further shipments of goods would be made to Corban to satisfy the needs for those projects until the outstanding balance was reduced to $100,000.00. (Condosta Affidavit; Dale Affidavit.) As of February 28, 2003, the outstanding balance owed by Corban to Hempel was $125,545.12, an amount well below the $200,000.00 credit limit. (Condosta Affidavit; Dale Affidavit.) As such, in breach of the Agreement, Hempel was demanding a monthly payment well in excess of the agreed upon $16,733.62, or Hempel would terminate its supply of product. (Condosta Affidavit; Dale Affidavit.)

6

Upon being notified of Hempel's unlawful unilateral change in the parties' Agreement, Mr. Condosta, on behalf of Corban, wrote a letter dated March 25, 2003, objecting to Hempel's unilateral reduction in the line of credit available to Corban and its termination of shipments of material. (Condosta Affidavit.) Condosta's letter also states that Hempel has miscalculated the outstanding balance owed to Hempel by Corban, an amount which was well below the agreed-upon line of credit. (Condosta Affidavit.) As such, at the time of the filing of the Complaint, and the present Motion for Summary Judgment, Hempel was aware that not only are there disputes of material fact relating to Corban's liability and Hempel's breach of the Agreement, but there is also a dispute relating to the amount owed under the invoices. As such, genuine issues of material fact exist which preclude the entry of summary judgment.

## III.    SUMMARY JUDGMENT STANDARD AND LEGAL ARGUMENT

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate only if all the probative materials of the record "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). The court must resolve all reasonable doubts regarding the presence of a genuine issue of material fact in favor of the nonmoving party and resolve all inferences, doubts, and issues of credibility against the moving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2. (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972).

Hempel's Motion for Summary Judgment entirely ignores the facts, which are known

to Hempel, which place in dispute whether Hempel is entitled to enforce an Agreement which Hempel breached. Hempel also ignores the fact that the only basis upon which it can allege that Corban has liability in this matter are the terms which Hempel unilaterally, and improperly, imposed on Corban in violation of the Agreement. In the alternative, even if Hempel is legally entitled to seek payment of the invoices, the amount owed pursuant to the invoices is in dispute, includes attorneys' fees to which Hempel is not entitled, and disregards the fact that Corban's counterclaim will assert substantial claims against Hempel for Hempel's breach of the parties' Agreement and for Hempel's tortious interference with Corban's existing and prospective third-party contracts.

### A.    Hempel Is Not Entitled To Summary Judgment Both As A Matter Of Law And Because Genuine Issues Of Material Fact Exist.

Hempel ingeniously ignores the fact that the parties' Agreement controls the parties' relationship, not the invoices. In attempting to oversimplify this case, and ignore the obligations which Hempel owed to Corban, and which Hempel breached, Hempel's Complaint and Motion for Summary Judgment attempt to limit the parties' dispute to the invoices. This is incorrect. As is set forth in the Condosta Affidavit and Dale Affidavit, the relationship between the parties, including the payment of the invoices, was governed by the parties' Agreement. The invoices merely evidence transactions which occurred under the Agreement.[2]

---

[2]    Had the procedural opportunity for Corban to file its Answer and Counterclaim arisen before the filing of Hempel's present Motion, the pleadings would have made it abundantly clear that a Motion for Summary Judgment is inappropriate. Due to the pendency of the Motion to Dismiss, and the fact that Corban has not yet had an opportunity to file its Answer and Counterclaim, Corban respectfully suggests, at the outset, that the Motion for Summary Judgment should be denied as prematurely filed.

As set forth in the Condosta Affidavit and Dale Affidavit, the parties' relationship was governed by the Agreement wherein Hempel extended a credit line of $200,000.00 to Corban, with a payment term of net ninety days, a minimum monthly payment obligation of $16,733.62 against the outstanding balance, which monthly obligation could be paid by way of credits upon shipment of Hempel's product directly to Corban customers.  Despite the fact that Corban regularly met its obligation to make the minimum monthly payment to Hempel, through either payments directly to Hempel, or the application of credits to the outstanding balance owed by Corban, and the fact that Hempel never notified Corban of any breach of its obligations to Hempel, on March 13, 2003, in violation of the Agreement, Hempel unilaterally notified Corban that the line of credit was reduced by 50% to $100,000.00, effective March 31, 2003.  (Condosta Affidavit; Dale Affidavit.)  Hempel also demanded immediate payment in excess of the agreed upon monthly payment, to bring the balance under $100,000.00, or Hempel would cease shipment of product. (Condosta Affidavit; Dale Affidavit.)  Because Hempel materially breached the parties' Agreement, Hempel is precluded from now seeking the benefit of such contract. *Bohn v. Commerce Union Bank of Tennessee*, 794 F. Supp. 158, 162-163 (W.D. Pa. 1992) (citing cases); *United States v. Curtis T. Bedwell & Sons, Inc.*, 506 F. Supp. 1324, 1327 (E.D. Pa. 1981). When raised as a counterclaim to the Complaint, Hempel will, undoubtedly, at the very least dispute that it breached the parties' Agreement.  As such, summary judgment on Hempel's claim for breach of the parties' Agreement should, respectfully, be denied.

Furthermore, assuming, *arguendo*, that the Court does not deem Hempel's claim against Corban as precluded by Hempel's material breaches of the Agreement, summary judgment is, respectfully, inappropriate as Hempel's breach of the Agreement is

responsible for the non-payment of the invoices.  As part of the parties' Agreement, Corban could make its minimum monthly payment to Hempel through either direct payments or through the application of credits to the outstanding balance owed by Corban.  (Condosta Affidavit; Dale Affidavit.)  Many of the credits due to Corban were the result of agreements Corban had with third parties wherein such third parties would purchase goods and materials from Hempel at an increased price.  (Condosta Affidavit; Dale Affidavit.)  Hempel was well aware of this arrangement and, in fact, encouraged Corban to enter into such contracts with third parties for the purchase of Hempel goods and materials, and was aware of, and encouraged, the generation of substantial credits from those third-party transactions.  (Condosta Affidavit; Dale Affidavit.)  In reliance upon the existence of the $200,000.00 line of credit, Corban bid on projects and entered into contracts which would require the provision of substantial amounts of materials from Hempel.  (Condosta Affidavit; Dale Affidavit.)

Despite the fact that Corban had met all of its obligations under the Agreement, on March 13, 2003, Hempel breached the parties' Agreement by unilaterally determining that the line of credit to Corban would be reduced to $100,000.00 as of March 31, 2003.  (Condosta Affidavit; Dale Affidavit.)  As of March 31, 2003, the outstanding balance owed by Corban to Hempel was $109,921.00.  (Condosta Affidavit; Dale Affidavit.)  Hempel, in further violation of the Agreement, refused to sell any product to Corban unless and until the outstanding balance was reduced to $100,000.00 or below.  (Condosta Affidavit; Dale Affidavit.)  As a result, Corban was not able to provide its customers with Hempel products, cutting off the ability of Corban to generate revenue and terminating Corban's ability to have any customer-generated credits applied to Corban's outstanding balance.  (Condosta

Affidavit.) In other words, the effect of Hempel's unilateral reduction in the line of credit constituted a breach of not only Hempel's obligation to provide credit, but also breached that aspect of the parties' Agreement relating to the means by which Corban would repay the outstanding balance. A party cannot take advantage of its own breach which prevents the other party from performing the contract. *Craig Coal Miners Co. v. Romani*, 355 Pa. Super. 296, 301, 513 A.2d 437, 440 (1986).

Hempel's numerous material breaches of the parties' Agreement form the basis of the Counterclaim which Corban will file once it is procedurally appropriate to do so. The facts of record, established by the attached Affidavits, indicate that there are substantial disputes of material fact relating to the parties' respective obligations. As such, Hempel's Motion for Summary Judgment, respectfully, should be denied.

Assuming, *arguendo*, that the Court deems that there is no material issue of disputed fact regarding Corban's liability to pay on the invoices, the amount of the invoices is disputed. As set forth in the Condosta Affidavit, Hempel miscalculated the outstanding balance owed to Hempel by Corban. Moreover, any amount which may be due and owing to Hempel by Corban will be offset, if not substantially exceeded, by Corban's intended counterclaims relating to, *inter alia*, Hempel's breach of contract and tortious interference with Corban's existing and prospective customers, which resulted in substantial damages to Corban arising from the delay in obtaining replacement goods and materials to Corban's customers and an inability to fulfill existing contracts or enter into new contracts with customers. (Condosta Affidavit.)

At the time Hempel breached the parties' Agreement, it was aware that, in reliance upon the existence of a $200,000.00 line of credit, Corban had been bidding on projects

and entering into contracts with its customers which required the provision of substantial amounts of Hempel product. (Condosta Affidavit.) When Hempel unlawfully refused to provide any further product until the obligation to Hempel was reduced to under $100,000.00, Corban was unable to meet its obligations to its customers. Corban was forced to find and procure replacement goods and materials which satisfied the specifications applicable to Hempel's goods so that Corban could satisfy its obligations to its customers. Corban experienced damages relating to the delay in obtaining such replacement goods and materials, and the fact that Corban was forced to purchase such replacement goods and materials at a price greater than the Hempel goods and materials upon which Corban had relied in entering into the contracts with its third parties. (Condosta Affidavit.) The delay in obtaining replacement goods and materials cost Corban to not only suffer damages relating to those contracts, but stifled Corban's ability to bid upon new contracts. (Condosta Affidavit.) In short, Hempel's misconduct put a strangle hold on Corban, resulting in damages which potentially well exceed the amount which Hempel claims it is owed. As such, the entry of summary judgment in this matter would, respectfully, be inappropriate.[3]

**B.    Hempel Is Not Entitled To An Award Of Attorneys' Fees.**

Hempel claims that it is entitled to recover its attorneys' fees pursuant to Texas law. As with its substantive claim against Corban, Hempel fails to give any reason why this

---

[3]    To the extent the Court may determine that summary judgment is appropriate with respect to liability for payment on the invoices, due to the potential counterclaim, the Court would not, respectfully, be able to assess the amount of compensatory damages awardable to Hempel, nor could the Court enter a final judgment on such claim until resolution of Corban's counterclaim. See F.R.Civ.P. 54(b).

Court should apply Texas law.  Under the "American Rule," an award of attorneys' fees is not warranted unless it is specifically provided by statute or in the parties' Agreement. *Mosaica Academy Charter School v. Comm. Dept. of Educ.*, 572 Pa. 191, 813 A.2d 813 (2002).  Hempel does not cite to any provision in Pennsylvania law, or in the parties' Agreement, which entitles it to an award of attorneys' fees.  As such, Hempel is not entitled to an award of attorneys' fees.

## IV.    CONCLUSION

Based upon the foregoing, Corban respectfully requests that Hempel's Motion for Summary Judgment be denied.

Respectfully submitted,

MARK S. HALTZMAN & ASSOCIATES

DATE: *APRIL 15, 2004*

BY: _____
Mark S. Haltzman, Esquire
Attorney I.D. No. 38957
One Belmont Avenue, Suite 402
Bala Cynwyd, PA   19004
(610) 668-0865
Attorneys for Defendant

EXHIBIT "A"

**AFFIDAVIT**

COMMONWEALTH OF PENNSYLVANIA  :
                                                          : SS
COUNTY OF MONTGOMERY               :

On the /5ᵗʰ day of April , 2004, before me, a notary republic for

the Commonwealth of Pennsylvania, personally appeared, William Condosta, who

being duly sworn according to law and intending to be legally bound, disposes and

says the following to the best of his knowledge and recollection:

THAT I am the Vice President, Operations of Corban Corporation ("Corban");

THAT Corban annually either purchased or arranged for the purchase by others

of between one and two million dollars of merchandise from Hempel Coatings (USA),

Inc. ("Hempel");

THAT during the time that Corban purchased goods and materials from Hempel,

Corban personnel worked closely with Hempel to improve the quality and performance

of the Hempel goods and materials;

THAT, on behalf of Corban, in August and September of 2002, I negotiated the

terms of a $200,000.00 credit limit with Hempel through Henrik Hansen, the Director

of Sales and Marketing of Hempel;

THAT the terms of Hempel credit limit to Corban were as follows: (a) the

maximum credit limit available to Corban was $200,000.00; (b) the payment term was

net 90 days; (c) Corban's minimum monthly payment obligation was $16,733.62

against the outstanding balance; (d) all credits due to Corban from Hempel would be

1

made upon shipment of product to Corban; and (e) all credits due in a given month would be considered part of the following month's payment against the outstanding balance (the "Agreement"). <u>See</u> attached.

THAT in the case of certain large shipments, Hempel would apply the amount of the credit even if the material had not been shipped. <u>See</u> attached.

THAT on September 6, 2002, via facsimile, Henrik Hansen, on behalf of Hempel confirmed and accepted the foregoing terms of the Agreement. <u>See</u> attached.

THAT in reliance upon the Agreement, Corban bid upon certain projects requiring the use of substantial amounts of Hempel material;

THAT Corban regularly met its obligation to make the minimum monthly payment to Hempel through either payments directly to Hempel or the application of credits to the outstanding balance owed by Corban;

THAT many of the credits due to Corban were the result of agreements Corban had with third parties including, but not limited to, J.F. Shea and Skyline Steel, to have these third parties purchase goods and materials from Hempel at an increased price;

THAT Hempel was aware of and encouraged Corban to effect the purchase of Hempel goods and materials and the substantial credits that derived therefrom;

THAT in most months, the credits due to Corban from these third-party transactions were sufficient to cover the minimum monthly payment due to Hempel pursuant to the Agreement;

THAT in most months, the credits due to Corban from these third-party transactions were sufficient to cover the minimum monthly payment due to Hempel pursuant to the Agreement;

THAT Corban met all of its obligations under the Agreement;

THAT if Corban breached any of its obligations, it was never notified of such breach by Hempel nor given an opportunity to cure such breach;

THAT as of February 28, 2003, the outstanding balance owed by Corban to Hempel was $125,545.12;

THAT on March 13, 2003, in violation of the Agreement, Hempel unilaterally notified Corban that the line of credit was reduced by 50% to $100,000.00 as of March 31, 2003;

THAT despite the fact that Corban had been bidding on projects and entering into contracts in reliance upon the existence of a $200,000.00 line of credit, Hempel notified Corban that no further shipments would be made to Corban until the outstanding balance was reduced to $100,000.00;

THAT on March 25, 2003, on behalf of Corban, I responded to the March 13, 2003 letter;

THAT my March 25, 2003 letter reminded Hempel that Corban and Hempel had entered into a binding contract for the credit limit, and advised Hempel that: (a) Hempel had miscalculated the outstanding balance owed to Hempel by Corban; (b) the outstanding balance did not exceed the agreed-upon line of credit; (c) Corban had not breached the Agreement in any respect, and (d) Hempel had breached the Agreement by unilaterally reducing both the line of credit available to Corban as well as the amount of material which Corban could order from Hempel;

THAT as of March 31, 2003, the outstanding balance owed by Corban to Hempel was $109,921.00;

3

THAT Hempel never responded to the March 25, 2003 letter;

THAT on June 4, 2003, on behalf of Corban, I sent a follow-up letter to Hempel requesting that they reconsider the unilateral and unlawful decision to reduce the line of credit available to Corban;

THAT on June 10, 2003, George Adams, the Hempel Director fo Finance confirmed Hempel's decision to reduce the line of credit available to Corban to $100,000.00 and stated unequivocally that no further shipments would be made to Corban until the outstanding balance was reduced to $100,000.00 or below;

THAT as a result of Hempel's refusal to sell product to Corban, in violation of the Agreement, Corban was forced to find and procure replacement goods and materials;

THAT it took Corban several months to find replacement goods and materials to satisfy the specifications applicable to the Hempel goods;

THAT the delay in obtaining replacement goods and materials forced Corban to delay in satisfying its obligations to third parties;

THAT the delay in obtaining replacement goods and materials caused Corban to suffer damages from the purchase of replacement goods and materials at a price greater than the Hempel goods and materials upon which Corban had relied in entering into contracts with third parties;

THAT the delay in obtaining replacement goods and materials caused Corban to suffer further damages due to, *inter alia*, its inability to bid upon contracts;

AND THIS Affidavit is executed for the purpose of responding to and opposing the Motion for Summary Judgment of Hempel, filed in <u>Hempel Coatings (USA), Inc.</u>

v. Corban Corporation, Civil Action No. 03-6062.

Further affiant sayeth not.

_____
WILLIAM CONDOSTA

DATED:


Sworn and subscribed to before me
this 15TH day of April ,2004.

_____
NOTARY PUBLIC

S:\Clients\Haltzman\Affidavit-Condosta.wpd
11206-2

```
            Notarial Seal
    Angela Wintz, Notary Public
Lower Merion Twp., Montgomery County
 My Commission Expires Jan. 29, 2005
```

5

FILE No.235 09/04 '02 14:13    ID:H        FAX:19365236073        PAGE 1

# HEMPEL



**HEMPEL COATINGS (USA). INC.**
600 Conroe Park North Drive • Conroe • Texas 77303 USA • Tel: +1 (936) 523 6000

TO TELEFAX NO: 610 837 8577

TO:    Encor Coatings

ATT:    Mr. Bill Condosta

FROM:    Henrik Hansen

RE:    Payment schedule and procedure

CC:    Jim Dale, Joel Benetti, George Adams,
Jack Bohr-Christensen - Hempel

FROM TELEFAX: +1 (936) 523 6073

DATE:        4 September 2002

YOUR REF:

OUR REF:

DEPARTMENT FAX: 936 523 6073

NO OF PAGES        1
INCL THIS:

Dear Bill,

I tried to call you last night and today but understand that you are traveling.

Kindly allow me to submit our final proposal for solving our problems and moving forward with a constructive business relationship. I trust this will meet your expectations and that you will agree to the terms to ensure that this is a mutual beneficial investment for our two comp anies. I need to mention that if we cannot agree to the terms below we must conclude that an agreement is not possible.

The agreement is:

1. Payment term is net 90 days,
2. Monthly minimum payment of $16,733.62 against outstanding.
3. Maximum credit limit is $200,000,00,
4. All credits are due upon shipment of the material to your customer.
5. Hempel will, as agreed to on the current Shea order only, apply the full credit towards your outstanding even if the material has not been shipped yet,
6. All credits earned in a given month will be consider part of the following months payment.

*(handwritten annotations: "TO US." , "① ", "most current Balance Du")*

Please let me know by return fax if you agree to these terms. Since there has been so many questions about what was agreed to in the past I have tried to make it short and to the point. Please do not take it as being rude as this is not the goal. We do appreciate your business.

Sincerely

*(signature)*

Henrik Hansen
Director of Sales & Marketing

*(handwritten: "SKY time 17000 Applied when shipped But Cover A-s Sept 04.")*



**ENCOR COATINGS, INC.**

P. O. Box 26 ◦ Route 248 ◦ Bath, PA 18014 ◦ (610) 837-9700 ◦ FAX (610) 837-8577

September 5, 2002

To       :    Henrik  Hansen
              Hempel

From  :    William Condosta
              Encor Coatings

Re      .:    Payment Schedule and Procedure

I was pleased to receive your fax yesterday memorializing our multiple conversations regarding the June 2002 agreement between Hempel and Corban. We agree with the 6 bullet points that you referenced in your fax to be the "Agreement" in substance. I would however like to clarify the following points:

### The Agreement

1. Agreed.
2. Agreed.
3. Agreed.
4. All credits due upon shipment of material.
5. Agreed
6. All credits earned in a given month will be applied to the most current payment due.

One oversight that you and I previously discussed is the 17,000-gallon order for Skyline Steel. This credit should be applied to August, September and a portion of October's payment.

I want to thank you for your expediency in returning my calls and helping to resolve the agreement issue.

With this behind, we look forward to continuing with the relationship that we have all worked very hard to achieve.

cc: Jim Dale
     Edward Gleason, Sr.



# HEMPEL

**HEMPEL COATINGS (USA), INC.**
600 Conroe Park North Drive · Conroe · Texas 77303 USA · Tel: +1 (936) 523 6000

| | |
|---|---|
| **TO TELEFAX NO:** 610 837 8577 | **FROM TELEFAX:** +1 (936) 523 6073 |
| **TO:**  Encor Coatings, Inc. | **DATE:**          6 September 2002 |
| **ATT:**  Mr. Bill Condosta | **YOUR REF:** |
| **FROM:**  Henrik Hansen | **OUR REF:** |
| **RE:**      Agreement to payment schedule and procedure | **DEPARTMENT  FAX: 936 523 6073** |
| **CC:**     Jim Dale, Joel Benetti, George Adams - Hempel | **NO OF PAGES**          1 **INCL THIS:** |

Dear Bill,

Thank you for your return fax.

This fax just to confirm that I received your agreement and to comment on the issue about the Skyline credit.

As the Shea credit will take care of August and September the Skyline credit will be applied after that so it is not an issue. It should all work out according to the new agreement with credits being applied by the time they ship.

Thanks again for working out the problems.

We are looking forward to getting the outstanding back down to the terms stated in our agreement and continuing a constructive and mutually beneficial relationship.

Please know that you can always call on Jim Dale, Joel Benetti, Mike Bentkjaer or myself if we can be of any assistance.

Sincerely,

Henrik Hansen
Director of Sales & Marketing

EXHIBIT  "B"

## AFFIDAVIT

STATE OF NEW JERSEY          :
                             : SS
COUNTY OF MORRIS             :

On the ᴏ7̶ day of Ap ril , 2004, before me, a notary republic for the State of New Jersey, personally appeared, James Dale, who being duly sworn according to law and intending to be legally bound, disposes and says the following to the best of his knowledge and recollection:

THAT I was contracted by Hempel Coatings (USA), Inc. ("Hempel") as a manufacturers representative;

THAT one of my largest sales accounts was Corban Corporation ("Corban");

THAT Corban annually either purchased or arranged for the purchase by others of between one and two million dollars of merchandise from Hempel;

THAT Corban personnel worked with Hempel personnel to improve the quality of goods sold by Hempel to Corban including the coal tar epoxy manufactured by Hempel;

THAT, I was involved in negotiations between Corban and Hempel in August and September of 2002 regarding an agreement between Hempel and Corban whereby Hempel agreed to extend a $200,000.00 credit limit to Corban;

THAT the terms of Hempel credit limit to Corban were as follows: (a) the maximum credit limit available to Corban was $200,000.00; (b) the payment term was net 90 days; (c) Corban's minimum monthly payment obligation was $16,733.62

1

against the outstanding balance; (d) all credits due to Corban from Hempel would be made upon shipment of product to Corban; and (e) all credits due in a given month would be considered part of the following month's payment against the outstanding balance (the "Agreement").

THAT in the case of certain large shipments, Hempel would apply the amount of the credit even if the material had not been shipped;

THAT on September 6, 2002, via facsimile, Henrik Hansen, on behalf of Hempel confirmed and accepted the foregoing terms of the Agreement;

THAT Corban regularly met its obligation to make the minimum monthly payment to Hempel through either payments directly to Hempel or the application of credits to the outstanding balance owed by Corban;

THAT many of the credits due to Corban were the result of agreements Corban had with third parties including, but not limited to, J.F. Shea and Skyline Steel, to have these third parties purchase goods and materials from Hempel at an increased price;

THAT Hempel was aware of and encouraged Corban to effect the purchase of Hempel goods and materials and the substantial credits that derived therefrom;

THAT in most months, the credits due to Corban from these third-party transactions were sufficient to cover the minimum monthly payment due to Hempel pursuant to the Agreement;

THAT Corban met all of its obligations under the Agreement;

THAT if Corban breached any of its obligations, it was never notified of such breach by Hempel nor given an opportunity to cure such breach;

THAT I regularly met with representatives of Corban to confirm the outstanding

2

balance owed by Corban to Hempel as well as the amount of credits owed by Hempel to Corban;

THAT as of February 28, 2003, the outstanding balance owed by Corban to Hempel was $125,545.12;

THAT on March 13, 2003, in violation of the Agreement, Hempel unilaterally notified Corban that the line of credit was reduced by 50% to $100,000.00 as of March 31, 2003;

THAT despite the fact that Corban had been bidding on projects and entering into contracts in reliance upon the existence of a $200,000.00 line of credit, Hempel notified Corban that no further shipments would be made to Corban until the outstanding balance was reduced to $100,000.00;

THAT I am aware of no act or omission on the part of Corban which served as basis for Hempel's reduction of the line of credit;

THAT as of March 31, 2003, the outstanding balance owed by Corban to Hempel was $109,921.00;

THAT on June 10, 2003, George Adams, the Hempel Director fo Finance confirmed Hempel's decision to reduce the line of credit available to Corban to $100,000.00 and stated unequivocally that no further shipments would be made to Corban until the outstanding balance was reduced to $100,000.00 or below;

THAT Corban and Hempel had an agreement that Corban would market Hempel product to third parties;

THAT, pursuant to this agreement, Corban could determine the price it could charge to third parties for Hempel goods;

3

THAT, pursuant to this agreement, any third party purchasing Hempel product through Corban would receive shipment directly from Hempel and would tender payment directly to Hempel;

THAT, pursuant to the Agreement, Corban would receive credits toward its outstanding balance for the difference between the amount charged by Hempel to Corban for the product and the increased price each third party agreed to pay to Hempel for the product;

THAT Corban routinely sold substantial amounts of Hempel product to third parties for which it received substantial credits;

THAT Corban routinely satisfied its minimum monthly payment obligation to Hempel by virtue of the credits it received;

THAT Hempel's unilateral reduction of the line of credit directly impacted Corban's ability to market Hempel product to third parties;

THAT Hempel's unilateral reduction of the line of credit directly impacted Corban's ability to accumulate credits toward its outstanding balance;

THAT Hempel's unilateral reduction of the line of credit directly impacted Corban's ability to meet its monthly payment obligations to Hempel;

4

AND THIS Affidavit is executed for the purpose of responding to and opposing

the Motion for Summary Judgment of Hempel, filed in <u>Hempel Coatings (USA), Inc.</u>

<u>v. Corban Corporation</u>, Civil Action No. 03-6062.

Further affiant sayeth not.

DATED:

_____
JAMES DALE

Sworn and subscribed to before me
this 07 day of April ,2004.

_____
NOTARY PUBLIC

S:\Clients\Haitzman\Affidavit-Dale.wpd
11208-2

Marla Jakubik
My Commission Expires 12/28/2007
Morris County, New Jersey

5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEMPEL COATINGS (USA), INC. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CORBAN CORPORATION | : | NO. 03-6062 |
| Defendant | : | JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

Mark S. Haltzman hereby certifies that a copy of the within pleading was served upon the following people by first class, prepaid mail on the date given below.

Heidi J. Gumienny, Esquire
Moulton & Myer, LLP
600 Travis Street
Suite 6700
Houston, TX 77002


Joseph S. Silverstein, Esquire
Klett, Rooney, Lieber & Schorling
Two Logan Square, 12th floor
Philadelphia, PA 19103-2756


DATE: April 15, 2004

Mark S. Haltzman, Esquire